*446 OPINION OF THE COURT
Jeremiah J. Moriarty, J.
The State moves, pursuant to section 8 of the Court of Claims Act, and CPLR 3211 (subd [a], pars 2, 7) for an order dismissing this claim on the ground that the court lacks jurisdiction over the subject matter of the cause of action, and because the claim does not state a valid cause of action. The papers before the court on this motion are:
(1) notice of motion, with supporting affirmation of George M. Levy, Assistant Attorney-General, and exhibits annexed,
(2) affirmation of Stephen F. Guthmann, Esq., in opposition,
(3) copy of notice of intention to file claim, filed March 23, 1979,
(4) copy of verified claim, filed September 13, 1979,
(5) letter, dated March 23, 1979, from Lawrence Wayne, chief clerk of Court of Claims, acknowledging receipt of notice of intention,
(6) letter, dated March 22, 1979, from Donald P. Hirshorn, Assistant Attorney-General, acknowledging receipt of notice of intention,
(7) verified complaint — Phillips v City of Syracuse,
(8) notices of claim against City of Syracuse, Onondaga County, Sheriff of Onondaga County, Syracuse Police Department, Onondaga County District Attorney.
This motion constitutes a facial attack upon the claim on the ground that it is legally insufficient. As such, for purposes of this motion, we accept the facts pleaded as true, and give claimant the benefit of every reasonable inference therefrom. All the dates mentioned are approximate.
On September 17, 1978, one Jesse James Phillips (hereinafter Jesse) was arrested by a member of the City of Syracuse Police Department, and incarcerated in the Public Safety Building. At the time of his arrest, interrogation and booking, Jesse was, for the first time, misidentified as the claimant herein, Edward Howard Phillips, Jr. (hereinafter Edward). Jesse was incarcerated, and in the custody of members of the Syracuse Police Department and/or Onondaga County Sheriff’s Department, from September 17, 1978 until his release a number of days thereafter, during which period he was continually misidentified as Edward.
On December 28, 1978, Edward was indicted by the Onon *447 daga County Grand Jury for a crime which is unstated in this record. A warrant of arrest was issued by the Honorable William J. Burke, Judge of the Onondaga County Court, ordering the arrest of Edward on January 15, 1979. Subsequent thereto and pursuant to said warrant, Edward was arrested in Lincoln, Nebraska. He waived extradition to the State of New York on January 24, 1979, and arrived at the Public Safety Building Jail in Syracuse on February 1, 1979.
On February 5, 1979, Edward was arraigned under _ the indictment of December 28, 1978 before Judge Burke. At the arraignment, the attorney originally appearing in the case, James Mederoff, Esq., stated that he had never seen Edward before in his life, and requested to be relieved of representing him on the criminal charges contained in the indictment.
On February 9, 1979, at a pretrial conference held in Judge Burke’s chambers, an Assistant District Attorney said that he would cause fingerprints to be taken of Edward who was still incarcerated in the Public Safety Building, and Judge Burke so directed. On February 16, 1979, Edward appeared before Judge Burke at which time it was noted that no fingerprints had yet been taken. Judge Burke again directed the District Attorney to have fingerprints taken or reviewed, and "not to sit on it any longer.”
On February 17, 1979, Edward was released from jail. All charges against him, under the indictment hereinabove described, were dismissed on or about February 22, 1979, and no appeal therefrom has been taken.
The foregoing facts are alleged in Edward’s verified complaint in his action in State Supreme Court against the City of Syracuse et al. These allegations are incorporated by reference into his claim against the State in the Court of Claims. It is further alleged in his claim that the conduct of the defendant, its agents, servants, officers and employees was grossly negligent and/or malicious, in willful, wanton and reckless disregard of the rights of the plaintiff, in failing to check, or in improperly checking, identity as a result of which he was extradited from his residence, Nebraska, to the State of New York.
It is contended that the State is legally responsible for the extradition, prosecution and detention of Edward because his extradition was facilitated and performed by members of the Onondaga County District Attorney’s office and/or the Onondaga County Sheriff’s Department, who were duly authorized *448 to represent the State of New York in dealings with sister States, in the context of extradition procedure, and that in furtherance of an extradition procedure, they act in their official capacity. It is further alleged that the members of the Onondaga District Attorney’s office, and the Onondaga Sheriffs Department, represented themselves to officials of Nebraska as agents, servants, officers and employees of the State of New York, thus they were acting under color of authority granted or implicitly granted, and so held themselves out as agents, servants, officers and employees of the State of New York, and officials of Nebraska believed them to be duly authorized to so act.
For his claim against the State, Edward seeks $3,000,000 for wrongful prosecution, extradition and deprivation of his liberty, and $4,000,000 in exemplary and punitive damages by reason of the malicious and/or grossly negligent conduct of the defendant, its agents, servants, officers and employees.
The legal theory upon which claimant relies, for the unfortunate situation which befell him, is based upon the role played by the Governor of this State in the extradition of those in an asylum State to answer criminal charges brought against them by the State of New York. That role is defined by CPL 570.52 which states: "Whenever the governor of this state shall demand a person charged with crime or with escaping from confinement or breaking the terms of his bail, probation or parole in this state from the executive authority of any other state, or from the chief justice or an associate justice of the supreme court of the District of Columbia authorized to receive such demand under the laws of the United States, he shall issue a warrant under the seal of this state to some agent commanding him to receive the person so charged, if delivered to him, and convey him to the proper officer of the county in this state in which the offense was committed.”
It is argued that, based upon the foregoing statute, those who travel to an asylum State, to take custody of fugitives for extradition to this State, do so at the bidding of the Governor, a State officer, and as his agent. It is further argued that any wrongful acts in so taking custody of a fugitive are acts of the State and the State is answerable in damages therefor. We disagree.
It appears that the reason that our laws require a guberna *449 torial request for return of a fugitive from justice to this State is the United States constitutional injunction that: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.” (US Const, art IV, § 2, cl 2.)
However, a careful reading of the New York Uniform Criminal Extradition Act (CPL art 570) reveals that the Governor’s request for the return of a fugitive to this State is generally based upon regular process instituted by a local prosecutor. CPL 570.54 (subd 1) provides: "When the return to this state of a person charged with crime in this state is required, the district attorney of the county in which the offense was committted, or, if the offense is one which is cognizable by him, the attorney general shall present to the governor his written application for a requisition for the return of the person charged, in which application shall be stated the name of the person so charged, the crime charged against him, the approximate time, place and circumstances of its commission, the state in which he is believed to be, including the location of the accused therein at the time the application is made and certifying that, in the opinion of the said district attorney or attorney general the ends of justice require the arrest and return of the accused to this state for trial and that the proceeding is not instituted to enforce a private claim.”
Based upon the pleadings and other papers before the court, and the reasonable inferences which can be drawn therefrom, it appears that the Governor requested the return of Edward, the claimant herein, to this State as a fugitive from justice based upon the written application of the District Attorney of the County of Onondaga, the place where the alleged criminal acts were committed by Jesse, for whom Edward was mistaken. The facial regularity of those papers are not placed in question in this claim. The Governor acted upon information contained in those papers. Claimant was wronged not because of the Governor’s actions, or the actions of those acting in his behalf, but because the information presented him was erroneous. The court notes that in those few reported cases in which damages were sought for wrongful extradition, the defendant was not the Governor of the requesting State, or the State itself, but the person at whose request the Governor *450 acted. (See Keller v Butler, 246 NY 249; Phelps v Phelps, 190 Misc 801, 803-804.)
The fact that claimant was wronged, and that he suffered damages thereby, seems clear. It is axiomatic that a legal wrong should not go without a remedy. While we do not find that a claim against that State is stated upon the papers before this court, it is certainly possible that one or more of the persons, or agencies, responsible for the original misidentification of Jesse for Edward, are answerable in damages to claimant, on one or more of the causes of action alleged in his complaint in Supreme Court. However, this court lacks jurisdiction to make such a determination.
Based upon all of the foregoing, this motion is granted, and it is ordered, that this claim be, and hereby is, dismissed for failure to state a cause of action against the State of New York, and the clerk is directed to enter judgment accordingly.